*1243 OPINION.
James:
The taxpayer in its petition sets forth nine several and distinct allegations of error on the part of the Commissioner in the determination of the tax for the years 1919, 1920, and 1921. For the most part these errors deal with questions of fact, although in some instances the errors alleged present mixed questions of fact and law. They will be taken up in order as set forth in the findings, except as to the three transactions involving A. James Eckert, which will be considered together.
In the matter of the indebtedness of Sam Kappler the Commissioner admitted that a loss occurred, and the issue is as to the method of computing such loss and the year to which it is.to be allocated. The taxpayer claims the loss in the year 1919, and the Commissioner allocates it to the year 1920. The Commissioner allows as the amount of the loss the difference between the sum total of the indebtedness of $25,018.99 and the face value of the two insurance policies, namely, $10,000. The taxpayer claims that the amount *1244 of the loss is the amount of the total indebtedness minus the net cash surrender value of the policies in question less the policy loan of $988. Upon the latter point we believe the taxpayer is entirely correct, and that the net loss on account of the Kappler account is the difference between $25,018.99 and $2,281.88, or $22,737.11. The realization of $2,281.88 is made up of the cash surrender value of the insurance policies, $2,369.35, minus the policy loan of $988 and plus the recovery from Kappler’s estate in the amount of $853.43. It appears from the findings of fact that the final settlement of the trustee in bankruptcy of Kappler’s estate occurred in 1920. The loss was, therefore, determined in that year, and upon that point the determination of the Commissioner is sustained.
The taxpayer contends for a somewhat higher rate of depreciation upon typewriting and bookkeeping machines than that allowed by the Commissioner. The evidence is generally to the effect that these machines do exhaust over a period of less than 10 years. On the other hand, these assets are only a part of the taxpayer’s furniture and fixtures upon which the Commissioner has allowed depreciation at the rate of 10 per cent. A considerable amount of this equipment had a life substantially in excess of 10 years. Upon the entire record we are not disposed to disturb the determination of the Commissioner in respect of the exhaustion, wear, and tear of the taxpayer’s property.
We are of the opinion that the contribution of the taxpayer to the Oneida County Farm Bureau was an ordinary and necessary expense of its business and .should be allowed as a deduction.)
The loss from the note of Sigmund Morris, claimed by the taxpayer to have been sustained in the year 1920, was, we believe, clearly determined in the year 1923, and the determination of the Commissioner in respect of this item is approved.
The matter of the account of Otto L. Sonne is really divisible into two parts. The Sonne account proper was closed out as a result of the bankruptcy proceedings instituted by the taxpayer itself, and upon that account it sustained a net loss of $2,903.84, when Sonne’s bankruptcy proceedings were wound up in the year 1920. As an outgrowth of the Sonne bankruptcy, the taxpayer, through an agent, purchased the merchandise of Sonne and disposed of it'on its own behalf. This, however, was an independent venture which had no necessary relation to the Sonne account. It appears that the agent, Rothstein, made deposits during the process of his liquidation of the Sonne merchandise, and that his deposit account became dormant in the bank in the year 1$20, and stood from that time forward at $2,540.64 upon the bank’s books.
In 1922 Kothstein’s compensation was determined and the bank transferred the credit to his account, remaining after his com *1245 pensation was deducted, to its own profit and loss account for the year 1922. Rothstein, however, was at all times merely an agent of the bank and the account standing in his name upon the books of the bank was in reality at all times the property of the bank held for it by an agent acting from the beginning under its direction. Such being the case, we are of the opinion that the $2,540.64 gain on account of the sale of the Sonne merchandise should be accounted for in the year 1920. Rothstein was entitled to reasonable compensation for his work in connection with this matter, which became a liability of the bank from the time the work was completed. This liability, however, was contingent in amount and uncertain as to the time of liquidation. The amount was determined and paid in the year 1922, and we are of the opinion that it should be allowed a,s a deduction to the bank in that year.
This brings us to three series of transactions involving the relationship of the bank to one A. James Eckert. The transactions are distinct and involve different years, but in principle the action of the Commissioner is identical in all and the position of the taxpayer is likewise identical. The difficulty lies in the strain which the undisputed testimony of the taxpayer’s witnesses places upon human credulity. In all of these cases Eckert is alleged to have made voluntary settlements with the bank in respect of sales of securities' which he had theretofore purchased from it without any understanding or agreement as to any subsequent accounting. The Commissioner takes the position that these alleged sales are not sales at all and that Eckert was acting as the representative of the bank in the subsequent sale and ultimate realization upon the securities.
This position is borne out by the fact that in some instances Eckert’s accounting to the bank was for the entire amount of the profits realized upon the sale of the securities less the ordinary rate of broker’s commissions, but in all cases it would appear that substantially all of the profit realized by Eckert was ultimately returned to the bank. The taxpayer admits that these realizations represent taxable profit and makes no claim that Eckert made it the recipient of a voluntary gift. The sole issue between the Commissioner and the taxpayer is the year in which the loss is to be deducted, and whether the taxpayer may deduct a loss on account of the securities sold to Eckert at the time sold, thereafter accounting for the gain as all profit in the year in which he made the several returns of cash to it. Upon the hearing of this appeal the Commissioner was given an opportunity to examine A. James Eckert in Utica, N. Y., by deposition, if the Solicitor so desired. Had such examination taken place, we would have been disposed to allow the widest scope of cross-examination of Eckert as an adverse wit *1246 ness. The Commissioner has made no effort along these lines, and we are not disposed to disregard the testimony of apparently straightforward witnesses merely upon the ground that their testimony indicates conduct on the part of Eckert materially at variance with ordinary human experience. It is quite probable that the taxpayer seized upon the year 1919 to clear out of its vault securities which it regarded as having no value and to register its loss thereon. This it had a perfect right to do, if it actually did make the sales in question, and if there was in fact no understanding, expressed or implied, between the taxpayer and Eckert that he thereafter would account for the proceeds of sales of any such securities.
Needless to say, transactions of this character are to be considered in the light of all of the circumstances, both at the time and subsequently, which bear upon the question whether or not an actual sale was made. Appeal of P. B. Fouke, 2 B. T. A. 219. Upon the entire record the facts of an actual and hona fide transaction must be determined. Appeal of the Pennsylvania Co. for Insurance, etc., 2 B. T. A. 48; Appeal of Benjamin T. Britt, 2 B. T. A. 53. Upon the record before us we are inclined to the opinion that the taxpayer actually disposed of the securities in question at the time and in the manner it claims to have done so, and it is entitled to deduct the losses so registered in the years concerned and should account for the profits as it has done in the years in which Eckert made payments on account thereof. This involves losses in the year 1919 of $14,172, on account of Eastern Power & Light, Wichita Falls, and Northwestern Railway bonds, and California Railway & Power stock; a loss of $23,750, on account of the sale of Chicago Elevated Railway notes; and a loss in the year 1921 of $5,000, sustained by the taxpayer on the sale of Winchester Co. stock.